**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DARIAH J. DYSON,**<br><br>Plaintiff,<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES, LLC,**<br><br>Defendant.<br>_______________________________/ | CASE NO: ______________________ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, DARIAH J. DYSON ("Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant, **EQUIFAX INFORMATION SERVICES, LLC** ("**Equifax**"), and alleges as follows:

**I. PRELIMINARY STATEMENT**

1. This is an action for damages, exclusive of attorneys' fees and costs, brought by Plaintiff against Defendant Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. Section 1681g(a)(1) of the FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." That obligation is the FCRA's foundational transparency provision. It is how a consumer learns what a credit bureau is reporting about her, and it is the necessary predicate to every other right the statute confers,

including the right to dispute inaccurate information and the right to insist that obsolete information be purged.

3. Equifax did not comply. In response to Plaintiff's request, Equifax produced a thirty-six page disclosure reporting thirty-eight (38) tradelines. Equifax truncated the account number of every single one of them. It disclosed a debt-buyer collection tradeline without ever identifying the original creditor of the underlying debt. It left the Date of 1st Delinquency field blank on seven tradelines its own payment grids report as delinquent, while populating that same field on four others. And it disclosed no payment history at all for twelve tradelines, notwithstanding that its own "Months Reviewed" field asserts that Equifax reviewed as many as ninety-nine months of data for those accounts.

4. Plaintiff seeks actual damages, statutory damages, punitive damages, and attorneys' fees and costs.

## II. JURISDICTION AND VENUE

5. Jurisdiction of this Court arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Equifax because Equifax is organized under the laws of the State of Georgia and maintains its principal place of business in this District.

7. Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) because Equifax resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims — including the assembly of Plaintiff's file and the preparation and issuance of the deficient consumer disclosure at

issue — occurred in this District. Section 1681p independently permits this action to be brought in any court of competent jurisdiction.

8. Assignment to the Atlanta Division is proper because Equifax's principal place of business is located in Fulton County, Georgia.

## III. PARTIES

9. Plaintiff Dariah J. Dyson is a natural person residing in Anchorage, Alaska.

10. Plaintiff is a "consumer" within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

11. Defendant Equifax Information Services, LLC is a Georgia limited liability company with a principal business address of 1550 Peachtree Street NW, Atlanta, Georgia 30309.

12. Equifax is registered to conduct business in the State of Georgia, and its Registered Agent is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

13. Equifax is a nationwide "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and § 1681a(p). In exchange for monetary fees, dues, or on a cooperative nonprofit basis, Equifax regularly engages in assembling and evaluating consumer credit information and other information on consumers for the purpose of furnishing consumer reports to third parties, and uses the mails and other means and facilities of interstate commerce to prepare and furnish those reports.

14. Equifax is therefore fully subject to, and on notice of, its obligations under the FCRA.

## IV. FACTUAL ALLEGATIONS

***Plaintiff's August 11, 2026 Consumer Disclosure***

15. On or about August 11, 2026, Plaintiff requested a copy of her consumer file disclosure from Equifax.

16. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request Equifax was required to "clearly and accurately" disclose all information in Plaintiff's file at the time of the request, subject only to the limited exception permitting truncation of Plaintiff's Social Security number.

17. Equifax provided an electronic copy of Plaintiff's *Credit Report* (the "**Disclosure**"), bearing a report date of August 11, 2026 and Equifax confirmation number 6223601621. **SEE PLAINTIFF'S EXHIBIT A.**

18. The Disclosure spans thirty-six pages and reports thirty-eight (38) tradelines under the heading "Credit Accounts," together with eleven named entries in the "Inquiries" section.

19. Plaintiff has the right to a full and complete disclosure of the contents of her file upon demand, at least once every twelve months and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. §§ 1681g(a), 1681j(a).

20. Despite that obligation, Equifax's Disclosure omitted significant amounts of information contained in Plaintiff's credit file.

***Missing Original Creditor***

21. Equifax's Disclosure reports a tradeline furnished by Jefferson Capital LLC, opened February 17, 2026, with a reported balance of $755, an Amount Past Due of $755, and a Date of 1st Delinquency of July 6, 2025.

22. Equifax expressly classified that tradeline's Loan/Account Type as a "Debt Buyer Account," and assigned it Narrative Code 057, which Equifax defines in the Disclosure as "Collection Account."

23. Debt buyers are companies whose primary business is the purchase and collection of debts originally owed to third parties. A debt buyer does not extend credit to consumers and cannot be the original creditor of any account.

24. Nowhere in the thirty-six pages of the Disclosure does the phrase "Original Creditor" appear. Equifax disclosed the Jefferson Capital collection tradeline without identifying — anywhere, in any field — the creditor to whom the underlying debt was originally owed.

25. The *Credit Reporting Resource Guide* ("**CRRG**"), published by the Consumer Data Industry Association, a trade association representing the consumer reporting agencies including Equifax, requires the K1 Segment — Original Creditor Name — to "be present each time the account is reported" and states that the segment "is required for collection agencies, debt buyers and check guarantee companies." **SEE PLAINTIFF'S EXHIBIT B.**

26. The CRRG explains that "**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.**" Without the original creditor names, consumers may not know what the accounts represent. *Id.*

27. The CRRG further instructs debt buyers to report the name of the company or creditor that originally opened the account for the consumer.

28. On information and belief, Jefferson Capital LLC complied with the CRRG and reported the name of the true original creditor of the account it purchased, and that name was contained within Equifax's file regarding Plaintiff at the time of her request.

29. The omission is not a technicality, and its consequence is evident on the face of the Disclosure itself. Equifax separately reports a Barclays Bank Delaware tradeline, opened February 20, 2023, bearing a Status of "Charge Off," an Activity Designator of "Transfer/Sold," and Narrative Code 123, which Equifax defines as "Account Transferred or Sold."

30. Plaintiff therefore has, in the same file, a charged-off account that Equifax reports as having been sold, and a debt-buyer collection account for which Equifax refuses to identify the original creditor. Plaintiff cannot determine whether the Jefferson Capital tradeline represents the sold Barclays debt now being reported a second time, or an entirely separate obligation.

31. Plaintiff cannot resolve the question from the figures Equifax disclosed. Equifax reports the Barclays Charge Off Amount as $2,802 while reporting the Jefferson Capital balance as $755, and reports the two accounts as opened roughly three years apart.

32. Because Equifax withheld the original creditor name, Plaintiff cannot determine whether her file reflects one debt or two, and therefore cannot formulate a dispute that she is statutorily entitled to make.

33. Despite being required to provide a full and complete disclosure of the information contained within its records under 15 U.S.C. § 1681g(a), Equifax thus shifted the burden of disclosure and inquiry away from itself and onto Plaintiff.

***Missing Account Numbers***

34. Equifax omitted the full account number of every tradeline in the Disclosure. For all thirty-eight accounts — including the Jefferson Capital debt-buyer tradeline — Equifax disclosed only a four-digit fragment preceded by an asterisk.

35. On information and belief, each furnisher reported the complete account number for its respective account to Equifax, and those complete numbers were part of Equifax's file regarding Plaintiff when she requested her consumer disclosure.

36. When Equifax produces and sells consumer reports regarding Plaintiff to third parties, the full account numbers and the names of the original creditors are included in its reports. The accuracy of Equifax's reports to third parties demonstrates both its ability to comply with 15 U.S.C. § 1681g(a) and the contents of its files.

37. Because of pervasive system deficiencies, Equifax's automated processes truncate account numbers on consumer disclosures across every category of account. Equifax knows of this defect but, despite such knowledge, has yet to correct it.

38. The failure to disclose full account numbers violates the FCRA's requirement that a consumer reporting agency disclose all information contained in a consumer's file clearly and accurately. *See Washington v. Equifax*, No. 3:19-cv-00154 (M.D. Tenn. June 12, 2019)

(in the absence of binding authority holding that a truncated account number is a clear and accurate disclosure, plaintiff stated a plausible claim under Section 609).

39. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), “it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide ‘accurate’ (and perhaps not ‘clear’) disclosure of ‘all information’ in the file.” **SEE PLAINTIFF’S EXHIBIT C.**

40. The truncation produced concrete confusion in this file. Equifax reports two separate Navy Federal Credit Union tradelines that are identical in every disclosed identifying respect: both report a Date Opened of March 1, 2004; both are classified as “Line Of Credit”; both list Plaintiff as an “Authorized User”; and both report a Credit Limit of $15,000.

41. The two tradelines differ only in their High Credit figures — $9,418 and $14,198 — and in the four-digit fragments Equifax substituted for their account numbers.

42. Plaintiff cannot determine from the Disclosure whether those entries reflect two distinct lines of credit or a single line of credit reported twice, because the only field capable of distinguishing them was suppressed by Equifax.

43. The omission of full account numbers prevents a consumer from reasonably verifying the accuracy of her credit file and undermines the very purpose of the FCRA’s disclosure requirement.

***Selective Omission of the Date of First Delinquency***

44. Under 15 U.S.C. § 1681c(a)(4), a consumer reporting agency may not report an account placed for collection or charged to profit and loss after seven years have elapsed from the date of the commencement of the delinquency that immediately preceded the collection activity or charge-off — the Date of First Delinquency ("DOFD").

45. Under 15 U.S.C. § 1681c(c)(1), a furnisher that reports a delinquent account to a consumer reporting agency must notify the agency of the month and year of the commencement of the delinquency that immediately preceded the account's delinquent status.

46. Equifax's disclosure template contains a dedicated field captioned "Date of 1st Delinquency" and a companion field captioned "Date Major Delinquency 1st Reported."

47. Equifax populated the "Date of 1st Delinquency" field on exactly four of the thirty-eight tradelines: Jefferson Capital LLC (07/06/2025), Discover Card (12/26/2025), Wells Fargo Card Services (07/22/2025), and Barclays Bank Delaware (11/08/2025).

48. Equifax left that same field blank on every other tradeline in the file — including seven tradelines whose payment history grids Equifax itself populated with delinquency ratings:

a. JPMCB Card Services, account ending 3473 — grid reports 30 days past due in September 2025, 60 days past due in October, November, and December 2025, 30 days past due in March 2026, and 60 days past due in April 2026, with Past Due Amounts of $426, $857, $888, and $441 in the corresponding months;

b. Navy Federal Credit Union, account ending 9604 — grid reports 30 days past due in July 2025, 30 days past due in March 2026, and 60 days past due in April 2026, with Past Due Amounts of $413, $432, and $836;

c. Navy Federal Credit Union, account ending 3619 — grid reports 30 days past due in August 2025 and 30 days past due in April 2026;

d. Discover by Capital One, account ending 8330 — grid reports 30 days past due in August 2025, with a Past Due Amount of $843;

e. DillardsMasterCard/CBNA, account ending 0055 — grid reports 30 days past due in September 2025, with a Past Due Amount of $63;

f. First Premier, account ending 9209 — grid reports 30 days past due in February 2025, with a Past Due Amount of $16; and

g. American Express, account ending 2443 — grid reports 30 days past due in May 2023.

49. That Equifax populated the field on four accounts establishes that the field is functional, that Equifax maintains delinquency-commencement data in its files, and that Equifax is capable of disclosing that data. Its blank appearance elsewhere is a disclosure choice, not an absence of information.

50. Equifax likewise populated the "Date Major Delinquency 1st Reported" field on those same four tradelines and left it blank on all thirty-four others.

51. Without the delinquency-commencement date for each adverse tradeline, Plaintiff cannot determine when any of the adverse items in her file must be purged, and therefore cannot

determine whether Equifax is presently reporting obsolete information about her in violation of 15 U.S.C. § 1681c.

52. The four dates Equifax did disclose compound rather than cure the problem, because they cannot be reconciled with the payment histories Equifax disclosed alongside them. Equifax reports a Date of 1st Delinquency of December 26, 2025 for the Discover Card tradeline, while the payment grid for that same account reports 30 and 60 days past due in November and December 2023 and 30 days past due in August 2025.

53. Plaintiff is unable to determine which of Equifax's competing representations reflects the information actually maintained in her file.

***Omitted Payment History and Account Data***

54. Equifax's disclosure template contains a field captioned "Months Reviewed," which reports the number of months of account history Equifax reviewed for the tradeline.

55. For twelve tradelines, Equifax reported a "Months Reviewed" figure while disclosing no payment history whatsoever — neither the month-by-month rating grid nor any balance history:

a. SYNCB/Care Credit, account ending 3501 — Months Reviewed: 99;

b. ComenityBank/Herbergers, account ending 6817 — Months Reviewed: 69;

c. ComenityBank/Catherines, account ending 1570 — Months Reviewed: 67;

d. CFNA/Bridgestone Retail, account ending 9488 — Months Reviewed: 67;

e. BestBuy/CBNA, account ending 1217 — Months Reviewed: 64;

f. ComenityBank/CH&Banks, account ending 4285 — Months Reviewed: 59;

g. SYNCB/Belk, account ending 2215 — Months Reviewed: 57;

h. Cap1/Kohls Department Store, account ending 3395 — Months Reviewed: 49;

i. AMEX/DSNB, account ending 1637 — Months Reviewed: 44;

j. Capital One, account ending 7393 — Months Reviewed: 25;

k. Comenity Capital/HSN, account ending 6722 — Months Reviewed: 12; and

l. Bank of America, account ending 8014 — Months Reviewed: 10.

56. Equifax's own field thus asserts that it reviewed as many as ninety-nine months of account data for tradelines as to which it disclosed no account data at all.

57. For four additional tradelines, Equifax disclosed a month-by-month rating grid but omitted the corresponding balance, scheduled payment, actual payment, and past-due history entirely.

58. Equifax also omitted the current balance for the Navy Federal Credit Union tradeline ending 6727, leaving the "Balance" field blank in the account header notwithstanding that the account's own history reports a balance of $8,723 as of July 2025.

59. Rather than disclose the payment and balance data in Plaintiff's file, Equifax's Disclosure directs the consumer elsewhere, instructing that "[t]o view up to 24 months of your historical payment and balance data, log in to your 'myEquifax' account at www.myequifax.com."

60. Section 1681g(a)(1) requires Equifax to disclose all information in the consumer's file in response to the consumer's request. It does not permit Equifax to withhold that information and redirect the consumer to a separate product to obtain it.

61. Without having access to all the information in her file, Plaintiff is unable to determine whether there is additional inaccurate or incomplete information that she needs to dispute.

***Prevalence of Equifax's Errors***

62. On information and belief, Equifax produced Plaintiff's Disclosure using an automated template that extracts data from its database and inserts it into preset fields of its consumer disclosure format, and that same template is used virtually every time a consumer requests her file from Equifax through www.annualcreditreport.com.

63. On information and belief, www.annualcreditreport.com is the location where the majority of consumers obtain their Equifax credit disclosure.

64. Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number and missing original creditor name errors. Equifax's error has therefore likely affected many thousands of consumers.

65. Despite being aware of these defects for years, Equifax has taken no corrective action. *See, e.g., Purdy v. Equifax Information Services LLC*, No. 8:19-cv-00217 (M.D. Fla.). Equifax's knowing and repeated conduct warrants an award of ***punitive damages***.

66. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by Equifax's desire to avoid costs and increase profits.

67. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Plaintiff deprived Plaintiff of a right conferred on her by federal statute.

68. Plaintiff has retained the undersigned counsel to represent her in this matter and has assigned to counsel her right to obtain reimbursement of her reasonable fees and costs.

## V. ARTICLE III STANDING

69. The denial of information to which a consumer is statutorily entitled is a concrete injury for purposes of Article III where the consumer was denied information that would have been useful to her and that she would have used. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

70. Plaintiff requested her Equifax file for the purpose of reviewing it, identifying inaccurate or obsolete entries, and disputing them. She would have used the original creditor name, the full account numbers, the delinquency-commencement dates, and the payment histories had Equifax disclosed them.

71. Equifax did not merely maintain the information at issue internally. Equifax prepared and furnished consumer reports regarding Plaintiff to identified third parties. The Disclosure's Inquiries section reports that each of the following companies obtained Plaintiff's credit information from Equifax on the dates specified:

a. Macys/Citibank, N.A. — July 30, 2026;

b. The Home Depot — Citi N.A. — July 30, 2026;

c. Capital One National Association — June 30, 2026;

d. Citibank N.A. — May 6, 2026;

e. Citi Cards CBNA — May 5, 2026;

f. Private Lbl Retail/Citibank NA — January 15, 2026;

g. Range View Management LLC — October 22, 2025;

h. FMR, LLC dba Fidelity — September 30, 2025;

i. Best Buy / CBNA — September 12, 2025; and

j. Navy FCU — August 4, 2026.

72. Equifax's Disclosure states that the Inquiries section "shows who accessed your credit report and when," and describes the inquiries above as periodic account reviews by existing creditors and similar business transactions. Each entry therefore reflects that Equifax furnished a consumer report concerning Plaintiff to the named third party under 15 U.S.C. § 1681b.

73. The consumer reports Equifax prepared and transmitted to those third parties were generated from the same file that is the subject of this action, and included the full account numbers, the original creditor name, and the delinquency data that Equifax withheld from Plaintiff.

74. Plaintiff's injury is not confined to the withholding itself. Because Equifax suppressed the original creditor name on a debt-buyer collection tradeline while separately reporting a charged-off account it designates as sold, Plaintiff cannot determine whether her file reports a single debt twice, and she has therefore been deprived of the ability to exercise her statutory right to dispute duplicate reporting.

75. Because Equifax suppressed the delinquency-commencement date on seven delinquent tradelines, Plaintiff cannot determine when the adverse information in her file must be purged, and she has therefore been deprived of the ability to exercise her statutory right to demand the removal of obsolete information.

76. Because Equifax suppressed the full account numbers, Plaintiff cannot determine whether two identically described Navy Federal Credit Union tradelines are one line of credit or two, and cannot reconcile any tradeline in the Disclosure against her own records.

77. Plaintiff further expended time and effort attempting to review and make sense of a thirty-six page disclosure that, by design, omitted the fields she needed.

## VI. VIOLATIONS OF 15 U.S.C. § 1681g

## COUNT I — WILLFUL VIOLATIONS OF 15 U.S.C. § 1681g

78. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

79. Equifax willfully violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for her consumer disclosure by failing to clearly and accurately disclose to Plaintiff, a consumer, all of the information in her file at the time of the request. Specifically, Equifax disclosed a debt-buyer collection tradeline reported by Jefferson Capital LLC without disclosing the name of the original creditor; disclosed all thirty-eight tradelines without disclosing the full account numbers; omitted the Date of First Delinquency from seven tradelines its own payment grids report as delinquent; and omitted the payment history entirely from twelve tradelines, even though each item of omitted information was reported by the data furnishers to Equifax and maintained in Equifax's files.

80. Equifax's violations were willful within the meaning of *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), in that Equifax knew or acted in reckless disregard of the fact that the information at issue was maintained within its file and was required to be disclosed to Plaintiff. Equifax's population of the Date of 1st Delinquency field on four tradelines while leaving it blank on delinquent tradelines in the same document demonstrates actual possession of the withheld data and actual capacity to disclose it. Equifax's violations are further evidenced by its longstanding awareness of these systemic disclosure failures, which have been identified and litigated by other consumers for years.

81. Equifax is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of Plaintiff's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Equifax Information Services, LLC, awarding Plaintiff the following relief:

a. The greater of Plaintiff's actual damages and statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. Such other and further relief as this Court deems just and proper.

**COUNT II — NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681g**

82. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

83. Alternatively, Equifax negligently violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for her consumer disclosure by failing to clearly and accurately disclose all of the information in her file at the time of the request, in the respects set forth above.

84. Equifax had a legal duty to provide Plaintiff with a clear and accurate disclosure of all information within its file at the time of Plaintiff's request.

85. Equifax breached that duty when it disclosed the Jefferson Capital tradeline without the name of the original creditor, disclosed every tradeline without the full account number, omitted the Date of First Delinquency from tradelines it reported as delinquent, and omitted the payment history from twelve tradelines, even though that information was reported by the data furnishers and maintained in Equifax's files.

86. Equifax is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681o, for Plaintiff's actual damages, plus attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Equifax Information Services, LLC, awarding Plaintiff the following relief:

a. Plaintiff's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other and further relief as this Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

87. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 16, 2026

Respectfully submitted,

/s/ Esther Oise
**Esther Oise, Esq.**
Georgia Bar No.686342
Attorney for Plaintiff
Oise Law Group, P.C.
2635 Governors Walk Blvd
Snellville, GA 30039
770-895-3736 | oiselaw@gmail.com

## VIII. ATTACHED EXHIBIT LIST

EXHIBIT A — Plaintiff's Equifax Credit Report dated August 11, 2026.

EXHIBIT B — Excerpts from the Credit Reporting Resource Guide (Consumer Data Industry Association), K1 Segment — Original Creditor Name.

EXHIBIT C — FTC Advisory Opinion to Darcy, June 30, 2000.